## VAN SANT v. DANCE.

### No. 3365.

District Court, D. Massachusetts.

April 17, 1930.

Everts, Keenan & Aldridge, of Boston, Mass., for plaintiff.

Allen T. Dresser, of Calais, Me., for defendant.

MORTON, District Judge.

This is a suit for infringement of patent No. 1,230,684 to Dance on drier for sand and gravel dated June 19, 1917. The claims in suit are the seventh, eighth, and ninth. The case was submitted on a stipulation covering the facts, in connection with the certain prior patents introduced by the defendant.

For many years it has been known that sand and gravel work better if dried before being mixed with other materials. A semicircular piece of sheet iron, rested on the ground with a fire under it, has long been used for this purpose. By 1881 a cylinder rotating over a fire was in use, so arranged that the material to be dried was fed into one end and discharged from the other (patent No. 245,980 to Smith dated August 23, 1881) ; fourteen years later the cylinder had been slanted to give a gravity feed toward the discharge end, and provided with interior shelves to stir or circulate the material as the cylinder revolved (patent No. 545,120 to Cummer dated August 27, 1895) ; the patent to Rundle of November 12, 1912, shows an inclined cylinder provided with circulating shelves through which heat from a furnace was passed, it was fed at the upper end and discharged at the lower.

At the time of Dance's first application, December 21, 1916, the use of oil heat for this purpose appears to have been coming in. It presented this problem, viz. that, if the flame of the oil burner was projected directly into the revolving cylinder, the material which was carried up by the shelves would fall through the flame as the cylinder revolved. This was wholly undesirable; it lowered the temperature of the flame, thereby wasting fuel; and the sand picked up oil from the flame which rendered it less suitable for use. To meet this difficulty, Dance made the invention covered by the patent in suit. He solved the problem by extending into the revolving cylinder over the flame a fixed, roof-shaped "bed," or baffle-plate. As the sand dropped from the top of the revolving cylinder, the bed prevented it from coming into contact with the flame; it lodged on the bed for a moment picking up heat, and then was pushed along to the bottom by other material falling upon it. The step which Dance took seems by no means a difficult one; but it did the trick and probably involved invention. He sold his patent, and it has come by mesne assignment to the present plaintiff. Dance is, of course, estopped to deny its validity, although he is free to insist that the claims shall receive a correct construction in the light of the prior art.

The only question is therefore whether the defendant's machine infringes. It has the large slanting revolving cylinder or "drum" of the Dance patent and of the art generally;

it uses oil heat; and the flame of the burner is thrown into the interior of the cylinder. Instead of being shielded there against falling material by a fixed "bed," as in the patent in suit, the flame is protected in the new machine by an inner cylinder, revolving with the large one and extending into it as far as the flame reaches; in other words, there is an inner tube shielding the flame. In the operation of this drier, the material works down the large cylinder, and, when it reaches this tube, falls on it—instead of into the flame or onto the "bed" of the patent in suit—and thence, as the tube revolves, to the bottom of the main cylinder.

 It is clear that the basic idea of the original Dance patent is used in the defendant's machine, i. e., that the flame is introduced directly into the revolving cylinder and is protected there by a metal sheet constantly interposed between it and the material which is being circulated by the action of the cylinder. The case turns on the construction of the claims. Those in suit are the seventh, eighth, and ninth. Each is long, and it is unnecessary to quote them in full. As to the seventh claim, the question is whether its third element, viz. "a *fixed* laterally inclined heat-conducting *bed* occupying the lower end portion or zone of the drum, and interposed between the burner flame and the top of the drum, the upper portion of the drum between said bed and the higher end constituting a vapor-conducting portion" (italics mine) (page 4, lines 25 to 32), is present. The "bed" is described in the specifications as follows: "Accompanying the holder 29 and rigidly secured thereto by suitable means, such as arms 29a, is a fixed heat-conducting bed 41 which projects into the lower end portion of the drum, is interposed between the burner flame and the top of the drum, and is arranged to be heated by the flame." Page 2, lines 31 to 37. The word "fixed" as used in the claim can mean but one thing, viz. a bed that is stationary in contrast to the revolving cylinder. As this characteristic of the bed is explicitly brought into the claim, it cannot be disregarded. It has often been held the public is entitled to rely on the language of claims in determining how far the monopoly of a patent extends and it is not just to disregard explicit language in claims even for the sake of protecting a meritorious patentee. McClain v. Ortmayer, 141 U. S. 419, 424, 12 S. Ct. 76, 35 L. Ed. 800; American Roll Gold Leaf Co. v. W. H. Coe Manufacturing Co., 212 F. 720 (C. C. A. 1). The ninth claim also includes this same element, and is disposed of by what has been said. Neither claim is infringed.

In the eighth claim the corresponding element is described as "fixed means in said zone for preventing contact of the material with the burner flame." It is much broader than the other two claims. By reference to the specifications, "zone" means that part of the revolving cylinder or "drum" reached by the flame. The claim thus covers fixed means in that zone for preventing contact between the falling material and the flame. It is urged by the plaintiff that "fixed" in this connection may well signify anything which is fixed in its relation to the flame and the zone, and is at all times above the flame so as to protect it against falling material. The specifications leave no room for doubt as to the kind of machine which the patentee had in mind, nor the meaning in which he used the word "fixed," i. e., he visualized a revolving drum internally heated by an oil flame above which was a stationary plate to protect the flame from the circulating material. There is nothing in the patent to suggest that it had occurred to him that the flame could equally well be protected by a concentric inner cylinder revolving with the drum; and the change does not seem to me to be an obvious one. The mere idea of shielding the flame from falling material was, of course, not patentable. The plaintiff is entitled to its patentee's solution of the problem and all variations of that solution; and, in view of the fact that the defendant, having sold his first patent, is relying on an alleged later invention in the same field, there is a natural inclination to view with suspicion the defense of noninfringement and to resolve this question against him. It is extremely close; but, in my opinion, the defendant's machine represents a different solution of the problem from that of the patent. It follows that this claim also is not infringed.

Judgment for defendant.