## HOLTZER–CABOT ELECTRIC CO. v. STANDARD ELECTRIC TIME CO.
### No. 4571.

District Court, D. Massachusetts.
May 29, 1939.

Burton W. Cary, Melvin R. Jenney, and Fish, Hildreth, Cary & Jenney, all of Boston, Mass., for plaintiff.

Dike, Calver & Gray, George P. Dike, and Cedric W. Porter, all of Boston, Mass., for defendant.

FORD, District Judge.

This suit involves infringement of a patent, United States patent No. 1,793,-846, granted to one Vernon Durbin, February 24, 1931, and admittedly owned by the plaintiff. The defendant in its answer asserts non-infringement and invalidity of the patent. Claims 1 and 5 only, of the patent, are in suit.

Statements of facts in this opinion may be taken as special findings, and statements as to the law, as legal conclusions, in compliance with Rule 52 of the new Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c.

According to the patent, it relates to an improvement in nurse call systems which are described as comprising a push button on the end of a cord which is provided with a plug that is received in a wall socket or receptacle so that the patient by pressing the button may cause the nurse to be called. Ordinarily, the pushing of the button lights a lamp over the patient's door, activates a buzzer, and causes a signal to be exhibited on an annunciator at the nurse's station. In some of these systems, which were old at the date of the issuance of the patent in suit, provision had been made for causing a signal to be given when the plug was accidentally disconnected from the wall socket. This was done by a switch mechanism which automatically closed the circuit in the wall socket; in other words, short-circuited the system and operated the call system in the same manner as when done by the push button. The nurse, on answering the signal and finding the plug out of the receptacle, restored it, thus cutting off the signals and leaving the patient's push button operative for normal signalling purposes.

At times, when the room was to be re-painted, or the cord sterilized, it became

necessary intentionally to remove the push button plug altogether, and in order to prevent the socket from setting the alarm signal caused by the short-circuiting device, a dummy plug was inserted in the wall socket, thereby cutting off the alarm signal. In the specification the patent states that the use of the dummy plug is objectionable, because it was unattached and likely to be lost; and it was to the problem of getting rid of the dummy plug in these systems that the patentee addressed himself.

The invention of the patentee may be described as one which provided the wall socket or receptacle with a built-in switch which, when the plug was removed, could be turned to cut off the continuing exhibition of a call from the room or patient's bed, with means provided of blocking the holes in the receptacle to prevent the reinsertion of the plug into the receptacle with the switch in its open or inoperative position (where it would be after the switch was manually turned to cut off the alarm signal), thereby requiring the switch to be restored to its first position in order to reinsert the plug and restore the system so that the customary patient's signals could be transmitted and also the warning signal could be given, if the plug subsequently should be accidentally removed. This the plaintiff maintained was an improvement over the prior art in that it got rid of the "objectionable dummy plug." It is well to say in this connection, for purposes of clarity, that if the plug could be inserted before the switch was turned back, the patient could signal the nurse, but no signal would flash if the plug were accidentally removed, and it was to insure the latter that the plaintiff in his device blocked up the holes of the receptacle when the switch was turned to the open position, thereby compelling the restoration of the switch to its original position in order to reinsert the plug and put the system in normal working order.

The patentee described his device as one that consisted of a wall receptacle of insulating material which carried a number of leaf springs and these leaf springs, when the plug is in position, make contact with the prongs of the plug and complete the circuit from the wiring in the wall to the flexible wiring leading to the push button used by the patient. There is also a short-circuiting disk which is scalloped shape, i. e., has certain high proportions and when the plug is out of the receptacle the springs under tension move inwardly and rest on the high portions of the short-circuiting disk completing the circuit through all the springs thereby giving a warning signal that the plug is out. Attached to the short-circuit disk is a switch body member carrying a switch handle. This is all insulating material and is also scalloped in shape and the two members are held together so that the high and low positions are opposite to each other. When the switch is moved manually from the "on" position to the "off" position, the high portions of the short-circuiting disk are removed from underneath the leaf springs and the leaf springs then rest on the high portions of the insulating cam which removes the short circuit through the various springs. In the latter position the high portions of the insulating cam come into the path of the openings so that the openings are mechanically blocked and it is impossible to put the plug in when the switch is in that position (open or inoperative position). When the switch is restored by a manual turning of the switch to the "on" position as indicated on the receptacle the openings are then clear and the plug may be reinserted and the equipment restored to normal operative condition.

The defendant's alleged infringing device covered by Patent No. 1,911,513, dated May 30, 1933, consists of a plug portion which has protruding prong-like contacts adapted to engage with the resilient contacts in the receptacle. It has, as with the plaintiff's device, a switch protruding centrally from the receptacle for the purpose of cutting off the signals while leaving the plug removed. The defendant's two-position switch is a central spring-pressed insulated plunger or switch that can move inwardly or outwardly along the longitudinal axis of the socket, and has on its outer end a depression with inwardly sloping sides. This plunger has a metal ring at its inner end and is normally pressed outward toward the plug by a coil spring. The cap of the socket has bayonet joints therein with shoulders, and the plunger has pins designed to engage therein, which provide means for locking the switch or plunger in its second or open circuit position. When the plug is inserted, it presses the switch in against its coil spring, and in that position the metal ring

on the switch is spaced from spring contacts which extend downward from the socket, and no electrical connection is established between them. If, however, the plug is pulled out, the coil spring forces the switch outwardly bringing the metal ring thereon in contact with the spring contacts, closing the circuit through them and operating the signal. When the plug is intentionally removed by the hospital authorities the socket can be prevented from short-circuiting by pressing in the switch against its spring with the finger, at the same time turning it in a clockwise direction. The pins on the switch then engage the shoulders in the bayonet joints, locking the switch in second or open-circuit position, with the metal ring and contact spring held speced apart. Reinsertion of the plug then causes the switch automatically to turn back to operating position by a cam-like action of the projection of the plug against the sloping surfaces of the depression formed in the outer end of the switch. It may be also restored to normal operative position by a manual turning of the switch.

The defendant, in order to show lack of invention, relied upon United States patents numbered 482,306, issued to Hall, 1892; 1,198,177 to Wright, 1916; and 1,-559,312 to Cadieux, 1925, under which the defendant was licensed.

In the Cadieux patent, upon which the defendant principally relies, a device is shown which has a plurality of spring contact fingers which may contact with the prongs of a plug. It has also associated with each of the contact fingers a separate spring forming part of a switch. The switch consists of a spring-pressed plunger having an insulating portion and conducting portion. With the plug inserted, the second set of spring contacts are in contact with the insulating portion of the plunger. When the plug is removed, the plunger comes forward allowing the conducting portion to close the circuits. A call thus goes in and signal lights are lighted. To cancel the call, if the push button plug is to be left down intentionally, it is necessary to insert a dummy plug which forces the spring plunger backward so that the inner contact springs are on the insulated portion and thus restoring the system to its normal operative position.

It is obvious from an inspection of the patent that the general notion of a device in nurses' calling systems which automatically lights on accidental disconnection, common to both the device of the plaintiff and the defendant, is old. However, there was nothing in the art as portrayed by the patents cited to indicate a means of cancelling an alarm signal except by the use of a dummy plug or a device practically similar to it.

The patentee of the alleged infringing device manufactured by the defendant testified that the defendant company had a license under the Cadieux patent, supra, and previous to the issuance of the patent No. 1,911,513 on said device he had been associated with Cadieux in the Connecticut Telephone Company and had designed two other hospital signal systems and secured patents on them. He also stated, and I find it to be a fact, that he had no knowledge at any time of the Durbin patent in suit before inventing and patenting the present alleged infringing device and first learned of the patent in suit in 1936. This patent had not been cited by the Patent Office against his application. The alleged infringing device of the defendant had been put upon the market sometime before the plaintiff's device was marketed. The systems of both the plaintiff and defendant have achieved a fair commercial success.

The defendant contends on the question of infringement, that although admittedly both its device and that of the plaintiff accomplish the same result, yet its device has a different construction and mode of operation in that its switch is different in construction and mode of operation and there is nothing in the defendant's device which blocks the holes for the prongs in the plug and nothing to prevent the reinsertion of the plug when the system is in open position as described by claims 1 and 5 in the patent in suit. On the other hand, the plaintiff maintains the defendant has made use of the actual invention described in the patent in suit, namely, the provision of a built-in receptacle switch for disabling the signals with means associated with the switch for preventing insertion of the plug into the receptacle when the switch is open, and argues in support of this contention that though in the plaintiff's device the scalloped switch body actually blocks the holes through which the plug contacts are inserted, the claims, especially claim 5, do not say that the plug contacts must be

physically blocked, but rather say that insertion is prevented when the switch is open, and this may be satisfied in two ways, (1) by physically obstructing the holes through which the plug contacts are inserted, or (2) by insuring the switch shall not be in its open position when the plug is inserted.

This leads us to a consideration of just what the patentee claimed in his patent. The claims are as follows:

"1. A hospital plug connection comprising a receptacle and a cord plug, the receptacle being provided with a plurality of contacts, and the plug being provided with a plurality of plug contacts, and a two-position switch having provision in one position to short-circuit the receptacle contacts when the plug is removed, and in the other position to ·open-circuit the receptacle contacts and to prevent the re-insertion of the plug.

"5. A hospital plug connection comprising a receptacle and a cord plug each having a plurality of contacts, a short-circuiting disk to be engaged by the receptacle contacts when the plug is removed, a switch which is normally covered by the plug and is exposed when the plug is removed and adapted to move the short-circuiting disk to open position, and means associated with the switch for preventing insertion of the plug into the receptacle when the switch is open."

Assuming, but not deciding, that the patent in suit is valid, we shall take up the question of infringement.

In the specification of the patent, page 2, column 1, the patentee states "the plug cannot be inserted when the switch is turned to open circuit the indicating devices connected with the receptacle base," and in the Patent Office after the original rejection of the claims as not being patentably distinguished from Lavine (No. 1,-465,735), in a letter of counsel, it is asserted that the claims were patentable over Lavine because in the latter the plug could be inserted in an "off position" while the patent in suit included the feature of preventing the insertion of the plug. The language of the claims themselves describes an invention which embraces means of plugging the holes of the receptacle to prevent the reinsertion of the plug when the switch is open. It was this feature that was emphasized by the patentee to distinguish his device from those in the prior art.

■ It is well settled that the claims of the patent measure the invention and the patentee can claim nothing beyond them. Motion Pictures Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 510, 37 S. Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959; Trico Products Corp. v. Apco-Mossberg Corp., 1 Cir., 45 F.2d 594; Van Sant v. Dance, D.C., 40 F.2d 547. And it must be said that the patent in suit described a device which physically plugged up the holes of the receptacle to prevent reinsertion of the plug. This is what was particularly pointed out and distinctly claimed in both the claims in suit, and the patentee is bound by it. McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800.

In view of this, it is apparent from the description of the two devices given above that the construction and mode of operation of the defendant's switch is different from that of the plaintiff. The plaintiff's switch comprises a metal disk with projections thereon for closing the circuit in one position and an insulated switch body with projections thereon which prevent the closing of the circuit in the second position. The defendant's switch consists of a cylindrical spring pressed insulated plunger with a metal ring in it which in the first position closes the circuit through a contact spring and the metal ring, and in the second position prevents the circuit from closing, because the spring contacts the insulated portion of the switch. The plaintiff's switch operates by rotating in a plane at right angles to the longitudinal axis of the socket, and when in the second position, prevents reinsertion of the plug. The defendant's switch, on the other hand, operates inwardly and outwardly along the longitudinal axis of the socket, and is rotated only to lock in open circuit position and is automatically returned to operative position on reinsertion of the plug. In order for the plaintiff to reinsert the plug in its device, because of the physical obstructions in the holes of the receptacle, it is necessary manually to turn the switch to its original position while in the defendant's device there is nothing physically obstructing the reinsertion of the plug in the holes of the receptacle and reinsertion therein automatically restores the mechanism to operative condition.

The plaintiff argues that the defendant appropriated the invention described by

the patent in suit, and the device of the defendant comes strictly within the terms of claim 5, and relying upon the doctrine of equivalents it contends that claim 1 of the patent, which the plaintiff admits definitely carries the idea of physical obstruction, has been infringed.

It is well established that a person may accomplish the identical result, by a patented device, as was the case here, without infringing the patent, if means substantially different from the patent are employed. Walker on Patents, Deller's Ed. Sec. 495, p. 1746; O'Reilly et al. v. Morse et al., 15 How. 62, 14 L.Ed. 601.

Referring to the differences in construction and modes of operation as described hereinbefore, it does not appear that the device of the defendant employs the same means to accomplish the same result, namely, to restore the system to operative condition after the plug is reinserted, as the device of the plaintiff. The switches are different in construction; they operate differently; the holes of the wall receptacle of the defendant's device, unlike the plaintiff's, are not physically blocked preventing the reinsertion of the plug; and the switch in the defendant's device is automatically restored to its open position, thus obviating the necessity, which is present in the plaintiff's device, of resetting the switch manually in the open position before reinsertion of the plug. The two devices are different in structure and different in operation and the device of the defendant cannot be held to be an infringement, even though they both achieve the same result. E. Van Noorden Co. et al. v. Cheney Co., 1 Cir., 75 F.2d 298; Edna Brass Mfg. Co. v. Wiltbonco Mfg. Co., 1 Cir., 300 F. 36.

The patentee in the present case is not aided by the doctrine of equivalents, even though the latter doctrine may be invoked for all patents, pioneer and secondary.

It appears here that the improvement in the plaintiff's device was a minor improvement and it is entitled to no broader range of equivalents than is necessary to protect the invention, assuming it to be such. Chicago & Northwestern Railway Co. v. Sayles, 97 U.S. 554, 24 L.Ed. 1053; McKays Co. v. Penn Elec. Switch Co., 8 Cir., 60 F.2d 762; United Shoe Machinery Corp. v. H. Gordon Co., Inc., 6 Cir., 59 F.2d 903, 904.

It is well settled that in order for one thing to be the equivalent of another it must perform the same function as the other in substantially the same way. Westinghouse, Jr., et al. v. Boyden Power-Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136; Burr v. Duryee, 1 Wall. 531, 17 L.Ed. 650; E. Van Noorden Co. et al. v. Cheney Co., supra.

I cannot find that the device of the defendant performed the same function in substantially the same way as the plaintiff's device, limited as was the latter by the language of both the claims in suit, wherein the idea of a physical obstruction in the receptacle for the plug was clearly stated. We cannot become confused and reach too quickly a conclusion of performance of the same function in "substantially" the same way because there is present an identity of result. The ultimate result is not patentable and the adoption of the reasoning of the plaintiff in this case would result in violating the elementary principle of law that a function is not patentable.

As was said by Judge Wilson, speaking for the court, in the Van Noorden case, supra, 75 F.2d 298, page 300: "Because one device performs the same function does not alone render it an equivalent and establish infringement. It must be performed in substantially the same manner." Electric Railroad Signal Co. v. Hall Railway Signal Co., 114 U.S. 87, 5 S.Ct. 1069, 29 L.Ed. 96; American Roll Gold Leaf Co. et al. v. W. H. Coe Mfg. Co. et al., 1 Cir., 212 F. 720; Edna Brass Mfg. Co. v. Wiltbonco Mfg. Co., supra.

It is my conclusion that the claim of infringement is not sustained and in view of this I refrain from deciding the question of the invalidity of the patent in suit.

Bill dismissed with costs.