### HOLTZER–CABOT ELECTRIC CO. v. STANDARD ELECTRIC TIME CO.

No. 3536.

Circuit Court of Appeals, First Circuit.
April 10, 1940.

Burton W. Cary and Melvin R. Jenney, both of Boston, Mass. (Fish, Hildreth, Cary & Jenney, of Boston, Mass., on the brief), for appellant.

George P. Dike, of Boston, Mass. (Cedric W. Porter and Dike, Calver & Gray,

all of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal by the plaintiff in a patent suit from a decree of the United States District Court for the District of Massachusetts, dismissing the plaintiff's bill in a suit brought to enjoin infringement of patent No. 1,793,846 filed January 4, 1928, and granted February 24, 1931, to Vernon Durbin, for a hospital plug connection. The patent is now owned by the plaintiff. It is claimed that the defendant's construction in patent No. 1,911,513 infringes the Durbin patent. The defendant denied infringement and the validity of the plaintiff's patent.

The patent in suit relates to improvements in nurse's call systems. It comprises a push botton on the end of a cord, which is provided with a plug that is received in a wall socket, or receptacle, so that the patient by pressing the button may cause the nurse to be called. In previous systems provision had been made for causing a signal to be given when the plug was accidentally disconnected from the wall socket. This was done by a switch mechanism, which automatically closed the circuit in the wall socket and operated the call system in the same manner as when done by the push button. The nurse, on answering the signal and finding the plug out of the receptacle, restored it and thus returned the signal to working condition.

When it became necessary intentionally to remove the push button plug, in order to prevent the socket from setting the alarm signal, a dummy plug was inserted in the wall socket, thereby cutting off the alarm signal. The improvement in the patent in suit made the use of the dummy plug unnecessary.

The patent of the plaintiff and the alleged infringing device of the defendant are clearly described in the opinion of the District Judge as follows [28 F.Supp. 58, 59]:

"The patentee described his device as one that consisted of a wall receptacle of insulating material which carried a number of leaf springs and these leaf springs, when the plug is in position, make contact with the prongs of the plug and complete the circuit from the wiring in the wall to the flexible wiring leading to the push button used by the patient. There is also a short-circuiting disk which is scalloped shape, i. e., has certain high proportions and when the plug is out of the receptacle the springs under tension move inwardly and rest on the high portions of the short-circuiting disk completing the circuit through all the springs thereby giving a warning signal that the plug is out. Attached to the short-circuiting disk is a switch body member carrying a switch handle. This is all insulating material and is also scalloped in shape and the two members are held together so that the high and low positions are opposite to each other. When the switch is moved manually from the 'on' position to the 'off' position, the high portions of the short-circuiting disk are removed from underneath the leaf springs and the leaf springs then rest on the high portions of the insulating cam which removes the short circuit through the various springs. In the latter position the high portions of the insulating cam come into the path of the openings so that the openings are mechanically blocked and it is impossible to put the plug in when the switch is in that position (open or inoperative position). When the switch is restored by a manual turning of the switch to the 'on' position as indicated on the receptacle the openings are then clear and the plug may be reinserted and the equipment restored to normal operative condition.

"The defendant's alleged infringing device covered by Patent No. 1,911,513, dated May 30, 1933, consists of a plug portion which has protruding prong-like contacts adapted to engage with the resilient contacts in the receptacle. It has, as with the plaintiff's device, a switch protruding centrally from the receptacle for the purpose of cutting off the signals while leaving the plug removed. The defendant's two-position switch is a central spring-pressed insulated plunger or switch that can move inwardly or outwardly along the longitudinal axis of the socket, and has on its outer end a depression with inwardly sloping sides. This plunger has a metal ring [or disc] at its inner end and is normally pressed outward toward the plug by a coil spring. The cap of the socket has bayonet joints therein with shoulders, and the plunger has pins designed to engage therein, which provide means for locking the switch or plunger in its second or open circuit position. When the plug is inserted,

it presses the switch in against its coil spring, and in that position the metal ring [or disc] on the switch is spaced from spring contacts which extend downward from the socket, and no electrical connection is established between them. If, however, the plug is pulled out, the coil spring forces the switch outwardly bringing the metal ring thereon in contact with the spring contacts, closing the circuit through them and operating the signal. When the plug is intentionally removed by the hospital authorities the socket can be prevented from short-circuiting by pressing in the switch against its spring with the finger, at the same time turning it in a clockwise direction. The pins on the switch then engage the shoulders in the bayonet joints, locking the switch in second or open-circuit position, with the metal ring and contact spring held spaced apart. Reinsertion of the plug then causes the switch automatically to turn back to operating position by a cam-like action of the projection of the plug against the sloping surfaces of the depression formed in the outer end of the switch. It may be also restored to normal operative position by a manual turning of the switch."

In the court below claims 1 and 5 were in issue. The court found there was no infringement and based his opinion on the fact that the language of the claims was limited. On appeal only claim 5 is involved. Claim 5 reads as follows:

"5. A hospital plug connection comprising a receptacle and a cord plug each having a plurality of contacts, a short-circuiting disk to be engaged by the receptacle contacts when the plug is removed, a switch which is normally covered by the plug and is exposed when the plug is removed and adapted to move the short-circuiting disk to open position, and means associated with the switch for preventing insertion of the plug into the receptacle when the switch is open."

In the plaintiff's device, when the switch is in open-circuit position, it must first be turned manually to its original position before the plug can be inserted. In the defendant's device, when the switch is open, the plug can still be inserted in the receptacle.

■ Claim 5 contains the language "and means associated with the switch for preventing insertion of the plug into the receptacle when the switch is open". That language describes the blocking of the

holes in plaintiff's patent. To be the same as the plaintiff's invention, means which block or physically prevent insertion of the plug into the receptacle when the switch is open would have to be present in defendant's device. Such means are not present, and the language of claim 5 describes plaintiff's device and not defendant's. When the switch is turned to open-circuit position after withdrawal of the plug in defendant's device, there is nothing which blocks the holes in the receptacle from the prongs of the plug, or which prevent the reinsertion of the plug when the switch is open. Defendant's device, therefore, does not fall within the terms of claim 5, nor does claim 5 describe defendant's means. The language of claim 5 is clear and definite and describes means for preventing insertion of the plug when the switch is open. It is limited to the language employed. Keystone Bridge Co. v. Phoenix Iron Co., 1877, 95 U.S. 274, 24 L.Ed. 344; Van Sant v. Dance, D.C., 40 F.2d 547.

■ The plaintiff and defendant attain the same result, but they do it through different means and in different ways. The defendant's device is not a copy of the thing described in the specification of the patentee, nor is it in substance the same thing. Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650. This is not infringement. To find infringement it must be demonstrated that substantially the same means are employed to accomplish the same result. E. Van Noorden Co. v. Cheney Co., 1 Cir., 75 F.2d 298; McDonough v. Johnson-Wentworth Co., 8 Cir., 1928, 30 F.2d 375.

The plaintiff argues that the meaning of claim 5 can be satisfied either by obstructing the holes by an immovable barrier, or by insuring that the plug cannot be inserted and the switch be open at the same time. It says in the defendant's device as in the plaintiff's, insertion of the plug is prevented when the switch is open.

An examination of the defendant's device does not admit either one of these conditions. There are no obstructions and the plug can be inserted when the switch is in open position. When the plug is removed and the plunger is turned clockwise, the switch is open and the plug can be inserted. When this insertion is complete the circuit is still open.

■ Therefore this argument of the plaintiff is not persuasive when the language of claim 5 is interpreted through a reading of the specification and drawings.

The law is well settled that claims must be construed in the light of the specification and drawings. Nash Engineering Co. v. Cashin, 1 Cir., 13 F.2d 718; American Fruit Growers, Inc. v. Brogdex Company, 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801.

Claim 5 is clear and precise and does provide for means which physically block and prevent the reinsertion of the plug until the switch is turned back by hand and the obstruction removed. The specification reads as follows:

"When, however, the switch is turned from the position shown in these figures to the position shown in Fig. 7, the high or inter-recess portion 50 of the switch body is presented opposite the plug holes in the face plate 21, so that the plugs cannot be inserted with the switch in this position; that is to say, the plug cannot be inserted when the switch is turned to open-circuit the indicating devices connected to the receptacle base."

"This movement at the same time presents the inter-recess projections 50 of the switch body opposite the holes in the face plate 21, so that the cord plug base cannot again be inserted until the switch is again turned back to normal position, so that when the receptacle is again put into use, the first thing that is required to be done is to turn the switch from the position shown in Fig. 7 to the position shown in Fig. 6, whereupon the plugs of the cord plug base may be inserted in the receptacle, and the cord restored to operative condition."

"This construction is preferred to one in which the switch may be operated from the outside, because of its double function of being permitted to be operated only when the cord plug is removed, and preventing the insertion of the cord until it is restored to operative condition."

This reference to the specification shows that the plaintiff's patent provided means which blocked the holes in the receptacle and thus prevented insertion of the plug. In the defendant's patent the holes for receiving the plug were never obstructed. It is only on the automatic operation of the switch, under the pressure of the plug when being inserted, that the same result is obtained. A different construction and mode of operation is employed in obtaining this same result, and the means used are not covered by claim 5. Identity of result is attained by the plaintiff and the defendant but substantially the same means are not employed to accomplish the same result.

Without determining whether the Durbin patent is valid, we find there is no infringement of the plaintiff's patent when it is construed as limited by the language in the claim.

The question of file wrapper estoppel need not be considered in this case.

The decree of the District Court is affirmed with costs to the appellee.