**BROWN & SHARPE MFG. CO. et al. v.
O. S. WALKER CO., Inc.**

No. 4294.

Circuit Court of Appeals, First Circuit.

April 27, 1948.

MAGRUDER, Circuit Judge, dissenting.

Hector M. Holmes, of Boston, Mass. (Maxwell Fish, Edgar H. Kent, and Fish, Richardson & Neave, all of Boston, Mass., on the brief), for appellant.

Melvin R. Jenney, of Boston, Mass. (Richard R. Hildreth, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment dismissing a complaint brought for infringement of two patents covering improvements in work holders or "chucks" of the permanent magnetic type. The two individual plaintiffs are the respective owners by assignment of two United States patents; the Bower patent No. 2,053,177, issued on September 1, 1936, and the Bing and Block patent No. 2,209,558 issued on July 30, 1940. The third plaintiff, Brown and Sharpe Manufacturing Company, a Rhode Island corporation, is the holder of exclusive licenses to make, vend and use the devices covered by both patents in the United States. Claims 5, 7, and 14 of the Bower patent, and claims 1 and 4 of the Bing and Block patent are in issue.

Since in previous litigation (Brown & Sharpe Manufacturing Co. v. Kar Engineering Co., Inc., 1 Cir., 154 F.2d 48, 49,

certiorari denied 328 U.S. 869, 66 S.Ct. 1377, 90 L.Ed. 1640, rehearing denied 329 U.S. 822, 67 S.Ct. 35) we held the above claims of the Bower patent, and also its claim 1, valid and infringed, we can refer to our former opinion for a detailed discussion of magnetic chucks, the general principles of magnetism applicable thereto, and Bower's contribution to the art, and with only a brief summary of these matters, proceed to a particular description of the Bing and Block chuck, the patent for which does not appear ever to have been litigated before, and of the defendant's accused device.

Magnetic chucks are used for holding work of magnetizable material in metal working machines. They are made in two general types; cylindrical for holding work in a lathe and box-shaped for holding work in milling machines, grinders, etc. They have been known and used in machine shops and similar places for a great many years. Up to the time of Bower electro-magnets were always used in their construction and this in spite of the fact that such magnets possessed certain disadvantages for the purpose. The reason for this is that the attractive force exerted by a magnet, its "flux" as it is called, although its path from one pole of a magnet to the other can be diverted, i.e., the field or the area of a magnet's attractive influence can be distorted from its normal pattern, cannot be cut off and turned on again at will. Therefore electro-magnets, which are energized, that is, have magnetomotive force imparted to them by an electric current but which instantly lose their magnetomotive force when the electric current is turned off, were always used in the earlier chucks because they could be made to release a work-piece by turning off the electric current, and permanent magnets, although otherwise superior to electro-magnets for the purpose, were not practical in chucks because they could not be temporarily demagnetized to permit ready removal of a work-piece.

Bower succeeded in freeing industry from the disadvantages incident to the use of electro-magnetic chucks by designing a permanent magnetic chuck from which work could readily be released by the simple expedient of moving a lever on the side of the chuck from an "on" to an "off" position. He accomplished this end without in any way altering the magnetomotive force of the permanent magnets in his chuck, but by altering the path of their flux, that is, by distorting their fields, or areas of magnetic influence, through the use of what are known as isolating shunts. To be more specific, he arranged a multiplicity of permanent magnets with their alternate poles uppermost in the box-like body of his chuck[1] in such a way that they could be moved laterally relative to the top-plate, or work-holding surface, and he constructed the work-holding surface of alternate sections of magnetizable and non-magnetizable metal so disposed therein that when the magnets were in "on" position a pole of each magnet registered directly under a section of magnetizable metal in the top plate with the result that those sections, acting as pole pieces or extensions of the magnets, carried their flux up through the work-holding surface of the chuck to the work-piece thereon and thence back to an adjacent magnet; but when the magnets were slid to "off" position the sections formed bridges between the poles of adjacent magnets and hence carried the flux emanating therefrom directly from one magnet to another thereby diverting the flux from the surface of the chuck and freeing the work-piece thereon.

Bing and Block used a different formation and organization of parts to accomplish the same end result as Bower. Instead of using a multiplicity of permanent bar magnets to provide the magnetomotive force required they used a single permanent magnet of cylindrical shape which they magnetized across its diameter. Thus their magnet, instead of having poles at opposite ends like the typical bar magnet, has its poles diametrically opposite one another and extending the length of opposite sides. And they mounted their magnet lengthwise in the box-shaped rectangular body of their chuck between two upright soft iron mem-

---

[1] In this opinion, as in our former one, it will suffice to discuss and describe only the rectangular box-like type of chuck.

bers called limbs, arcuately channelled internally closely to receive, indeed almost but not quite to surround, the cylindrical permanent magnet; these upright limbs resting on a base of non-magnetizable metal such as bronze and forming the sides of the body of their chuck. Thus when their cylindrical permanent magnet is positioned with its poles horizontal, that is, in a plane parallel to the base of the chuck, the upright members which form the sides of the chuck act as pole pieces to conduct the flux of the magnet up to the top surface of the chuck to hold a work-piece. But when the central magnet is revolved ninety degrees so that its poles are one above the other, the limbs which form the sides of the chuck, because of their arcuate channels, form bridges across the cylindrical magnet's poles and carry its flux directly from one pole to the other because that is then the easiest path for the flux to take.

As another embodiment of their invention Bing and Block show two cylindrical permanent magnets of the kind described, mounted, with opposite poles uppermost, side by side transversely, but separated by an air gap, in a box-shaped chuck and arranged for simultaneous rotation, as by being geared directly to one another. These magnets are shown journaled for rotation immediately over soft iron blocks arcuately channelled on top to receive them, and those blocks are shown resting upon a base of magnetizable metal. The top plate, or work-holding surface of this chuck is made up of alternate transverse sections of magnetizable and non-magnetizable metal, the magnetizable sections being directly over the magnets, and having their lower surfaces arcuately channelled to fit down over the magnets. Thus when the magnets are positioned with their poles one over the other, the path of the flux emanating therefrom forms a circuit through the magnets, through the blocks upon which they rest, through the base of the chuck, and up through the magnetizable sections of the work-holding surface over the magnets, and thence to the work-piece thereon to hold the latter in place. But when the magnets are rotated ninety degrees to a horizontal

position the channelled blocks under them and the channelled sections of the work-holding surface on top of them bridge their poles and divert their flux out of the workpiece, and also incidentally out of the base of the chuck.

The different units of the Bing and Block chuck which we have described are complete chucks in themselves but they are so designed that like units can be joined together, as counsel for the plaintiffs-appellants put it in examining a witness, "like the sections of a Globe-Wernicke bookcase", to form chucks of larger size.

The defendant in its accused device employs what in effect is a cylindrical permanent magnet journaled at its ends for rotation within arcuately channelled soft iron members. But its design differs, in some respects radically, from that disclosed by Bing and Block. Its cylindrical magnet consists of a permanent magnet bar, rectangular in cross section, with almost semicylindrical soft iron caps running the length of its broader sides. The magnet bar is so magnetized that one of its broader sides constitutes its north pole and the other its south pole, so that as a result each soft iron nearly semicylindrical cap forms a pole piece of the magnet, and the whole assembly functions as a cross-magnetized cylindrical magnet because soft iron is a ready conductor of magnetic flux.

The box-like part of the defendant's device consists of a soft iron base plate with upstanding members along its sides which form the side walls of the chuck. The base plate is relatively thicker than the side walls, and is arcuately channelled lengthwise to accommodate the cylindrical magnet. In cross-section the body of their chuck looks like a U with a flat bottom. Two fixed permanent bar magnets, one on either side of the cylindrical magnet, extend the length of the chuck about half way up its sides and rest upon the arcuately channelled base of the chuck but are separated from its side walls. These fixed magnets are so magnetized that their top halves are of one polarity and their bottom halves of the opposite polarity and they are mounted in the chuck with their north

poles uppermost.[2] Above them is a top plate having a longitudinal arcuate channel in its lower surface so that it, with the longitudinal arcuate channel in the base plate and the fixed permanent magnets, forms a hole running the length of the chuck into which the cylindrical magnet closely fits. The top plate fits in between the side walls of the chuck but is not in contact with them, so the work-holding surface of the chuck consists of the top plate and the upper edges of the sides. The spaces between the top plate and the side walls, and between the fixed magnets and the side walls, are filled with some non-magnetic metal such as Babbitt metal.

Thus the flux from the uppermost poles of the two fixed magnets passes to the surface of the chuck through the top plate superimposed upon them, and the flux from the lowermost poles of the magnets passes down through the base plate of the chuck upon which the magnets rest, and then is carried upward through the side walls attached to the base plate to the work-holding surface with the result that there is provided a work-holding surface having sections of opposite polarity and hence capable of holding a work-piece.[3]

But without the central cylindrical magnet the chuck is inoperative as a practical matter because the fixed side magnets alone have insufficient strength to hold a work-piece firmly enough for machining or grinding, and there is no way to release a work-piece from such attraction as they do possess. When, however, the cylindrical magnet, which is journaled in plates which form the ends of the chuck, is in place in the chuck and rotated by a transverse handle provided for the purpose at one of its ends so that its uppermost pole is of the same polarity as the uppermost poles of the fixed magnets, its flux takes substantially the same path as the flux of the fixed magnets, and all three magnets in unison

exert an attractive force sufficient to provide a chuck powerful enough for practical use. Then when the central cylindrical magnet is rotated 180 degrees so that its uppermost pole is of a polarity opposite to the polarity of the uppermost poles of the fixed magnets, the flux of all three magnets ceases to flow to the work-holding surface of the chuck so that a work-piece thereon can readily be removed.

The basic question in this case as we see it is whether the defendant's chuck operates upon the same principle as those of Bower and of Bing and Block. The plaintiffs-appellants, of course, contend that it does. They say that nothing of sufficient significance has been shown in this case to cause us to reverse our former conclusion that the claims of the Bower patent in issue are valid; that Bing and Block conceived and contrived a new, highly ingenious, useful, and therefore patentable improvement upon Bower's inventive idea, and that the defendant-appellee "is utilizing and enjoying the inventive idea of Bower in a form which also embodies the contribution of Bing and Block, all as defined in the claims of the patents in issue." In consequence they assert that their patents are valid and that the defendant infringes them.

The District Court, however, thought otherwise. It found that the defendant's chuck, because of the fixed permanent magnets therein, "operates on a substantially different principle from Bower and Bing and Block" and therefore does not infringe, and in view of this conclusion did not consider it necessary to pass upon the validity of the plaintiffs' patents. In the view we take of this case it will not be necessary for us to pass upon the question of the validity of those patents either. For present purposes we concede their contentions with respect to the validity of their patents since we think their contention with

---

[2] No reason is perceived why they could not as well be mounted with their south poles uppermost, but for the chuck to function both magnets would have to be mounted with like poles uppermost.

[3] A grill-like extension of the work-holding surface known as an adapter plate

may be used (in fact is commonly used on all chucks) to provide a more finely divided work-holding surface, i.e., one with a multiplicity of poles, so that small work-pieces, or a number of small work-pieces, may conveniently be held.

respect to infringement cannot prevail. Our discussion shall therefore be limited to the latter issue.

Broadly speaking the claims of the Bower patent in issue, in one form of language or another, claim relative lateral movement between permanent bar magnets and soft iron conductors which in one position of the magnets carry their flux to the work-holding surface of the chuck and in the other position provide auxiliary or shunting circuits, to divert or to shunt, the flux of the magnets out of the work-piece and so release it without moving the work-piece from the work-holding zone of the chuck. The claims of the Bing and Block patent in issue are rather differently phrased. They claim, again speaking broadly, relative rotary movement between a permanent cylindrical magnet polarized transversely, and soft iron conductors called limbs having cylindrical pole-arcs snugly fitting or embracing the magnet, so that in one position its flux is carried by the limbs to the work-holding surface of the chuck, but when rotated to another position "its flux is short-circuited by the limbs." Thus all the claims in issue cover release of a work-piece by a relative movement of parts whereby an auxiliary magnetic circuit is created to divert the flux of permanent magnets away from the surface of the chuck and the work-piece thereon through a path or circuit within the chuck itself.

This, the plaintiffs-appellants say, is exactly what the defendant does in its accused device. They say that in that device when the central cylindrical magnet is so adjusted that it is of opposite polarity to the fixed side magnets, i.e., when the fixed magnets are positioned in the device with their north poles uppermost and the cylindrical magnet is turned so that its south pole is uppermost, each south pole, in accordance with inexorable physical law, attracts the flux from an adjacent north pole so that each of the three magnets, in connection with the bridging pole pieces, supplies a return path or auxiliary circuit for, in effect short circuits, the flux of an adjacent magnet, with the result that "the field of the magnet assembly no longer ex-

tends up through and beyond the pole pieces for useful work, but is contracted or confined within the area of pole pieces and magnets, within the chuck, by a diversionary circuit composed of the pole pieces and a contiguous magnet of opposite polarity, all without moving the work or diminishing flux volume or magnetomotive force", substantially as in Bower and in Bing and Block. They say this conclusion is compelled by the testimony of their expert and necessary inferences from the testimony of the defendant's expert, buttressed by the fact that the Walker chuck with its fixed magnets removed functions exactly like the Bing and Block chuck. That is, they point out that if the cylindrical magnet in a Walker chuck with its fixed magnets removed is positioned with its poles one over the other, the flux from the topmost pole will pass through the top plate to the surface of the chuck and the flux from the lowermost pole will pass down through the base plate and thence up through the side walls to provide a work-holding surface having sections of opposite polarity, whereas when the cylindrical magnet is rotated ninety degrees so that its poles are side by side, or horizontal, the arcuate channels cut in the bottom of the top plate and the top of the base plate in which it closely fits, make the top plate and the base plate function as bridges to create an auxiliary circuit between the poles of the cylindrical magnet and short circuit its flux out of the work-holding surface of the chuck. Therefore they argue that Walker merely redesigned the Bing and Block chuck by placing his two arcuately channelled members one over and the other under a rotatable cylindrical permanent magnet instead of on either side of such a magnet, and then added two fixed permanent magnets to provide increased holding power in a smaller space.

There is force in this contention. But as we have already indicated, the court below did not adopt it but took the view that Walker's fixed magnets caused his chuck to operate on a substantially different principle from that of Bower and Bing and Block. It considered that Walker accomplished release of the work-piece not by

moving a permanent magnet relative to two others so that each magnet in the group acting as a conductor served to divert or shunt the flux of its adjacent magnet out of the work-holding zone of the chuck, but that he accomplished the same end by moving one permanent magnet relative to two other permanent magnets so as to place their magnetomotive forces in opposition thereby weakening the effective magnetomotive force of the group of magnets and as a result contracting, collapsing, or narrowing the external field of the magnets as a group so that it no longer extended to the work-holding zone of the chuck. In short, it took the view that Walker did not release by establishing a shunting or diverting circuit for flux but by reducing effective magnetomotive force, i.e., the force that creates the external magnetic field. It said:

"Both the Bower and Bing and Block patents employ soft iron shunts to short circuit the work piece, i.e., divert the lines of magnetic force to a path of less reluctance than that provided by the work piece. Bower, as shown, uses portions of the face plate for the purpose of diverting the flux. Bing and Block use the cylindrically hollow limbs which support the magnet. The defendant resorts to a different principle; it confines the effective magnetomotive force to the area immediately adjacent to the magnets by juxtaposing balanced magnets of opposite polarity. Some flux, it is true may be diverted through the contiguous pole pieces. But the main cause of the demagnetization of the face plate is a narrowing of the effective magnetic field due to the interaction of practically contiguous magnets of opposite polarity."

It is true that a piece of magnetizable metal in an external magnetic field, such as the bridges used by Bower and Bing and Block as auxiliary magnetic circuits, will have the effect of collapsing, contracting or narrowing the external magnetic field at the place therein where the metal lies. As we pointed out in the Kar case "the lines of magnetic force in the field, instead of passing through the air where they meet more resistance, will pass through the metal where they meet less resistance and concentrate there." Thus in a sense Bower and Bing and Block with their bridges narrowed the effective area of the external field of their magnets so that it no longer reached the work-holding zone of their chucks to hold the work-piece. But it does not necessarily follow from this that use of a bridge or shunt is the only way to accomplish a reduction in the area of a magnet's external field. The plaintiffs-appellants' expert witness himself admitted on cross-examination that "a field can be reduced without diverting." And, although it is true that the magnetomotive force of a single permanent magnet, once it has been reduced, cannot be built up again without re-magnetization, it does not follow that the magnetomotive force of a group of magnets cannot be reduced by positioning the magnets in the group so that their forces neutralize one another and then positioning them so that their forces supplement one another, thereby diminishing or increasing the effective magnetomotive force of the group as a whole at will. Therefore we cannot say that the view taken by the District Court is clearly erroneous because it is based upon a misconception of established principles of the law of magnetism, and say instead that application of those principles requires the conclusion that Walker's group of magnets merely supplement one another in "on" position and provide auxiliary shunting circuits for, or short circuit, one another in "off" position.

On the contrary we find that the conclusion of the District Court is fully supported by the testimony of the defendant's expert who pointed out that Walker's magnets must necessarily do more than merely provide diversionary circuits for each other since their magnetomotive forces must be in balance if release of the work-piece is to be achieved. He said that the behavior of the Walker chuck "is affected seriously by the magnitudes of the magnetomotive forces of the fixed and movable magnets", and, in explaining the operation of that chuck by reference to a model of it introduced by the defendant as its Exhibit A, he said: "In the 'hold' position, if I refer

to the wooden model * * * Exhibit A, the operation which places the center magnet in the position where its polarity is aligned with the polarity of the stationary magnets, so that to be specific we might have north, north, north, reading across the top, we establish by that procedure substantially one large magnet. The magnetomotive forces all effectively serve to add to the available magnetomotive force at the holding region of the chuck. Now, when I turn the magnet 180 degrees by the model, I effectively cancel the fields. The magnetomotive forces in the region of the work-holding zone are reduced to zero. I must have the balanced feature in order to bring about the release." And he illustrated his point by an experiment on a commercial Walker chuck which impressed the court below and also impresses us.

He withdrew the cylindrical magnet of a Walker chuck into a snugly fitting soft iron tube, which acted as a "keeper" to prevent exposure of the magnet to a large air gap which would permanently reduce its magnetomotive force, and in its place in the chuck he inserted a soft iron cylinder of the same size. Then he demonstrated that the shunting effect of the cylinder only very slightly reduced the holding power of the two side magnets. Following this he removed the keeper tube from the cylindrical magnet, thereby exposing it to an air gap and permanently weakening it, and then put it back in the chuck. This resulted in seriously impairing the operation of the chuck in that work-pieces could only be removed from it with substantial difficulty. This experiment he said showed that Walker did not release primarily by shunting, but primarily by balancing opposing magnetomotive forces—by putting balanced magnets in opposition to one another—a wholly different principle of operation from that taught by Bower and Bing and Block.

Considering the record as a whole it seems to us that the defendant accomplishes its end, release of the work-piece, by counter-balancing the magnetomotive forces of a group of permanent magnets, whereas the plaintiffs accomplish the same end by diverting, re-routing or by-passing the flux of a group of permanent magnets through an auxiliary magnetic circuit. Therefore, although the plaintiffs and the defendant attain the same result, they do so by different means and in different ways and there is no infringement. Holtzer-Cabot Electric Co. v. Standard Electric Time Co., 1 Cir., 111 F.2d 71, 73. At least we cannot say that the conclusion to that effect reached by the court below, which had the opportunity to judge the credibility of the opposing expert witnesses, is clearly erroneous.

The judgment of the District Court is affirmed.

MAGRUDER, Circuit Judge (dissenting).

It is an act of temerity to express disagreement with an opinion by Judge Woodbury in a patent case. But I can't see anything in the defendant's accused magnetic chuck other than a clever adaptation of the principle of the Bower chuck as improved by Bing and Block.

If I understand the record aright, there was really no conflict of evidence below as to what happens when the rotatable central magnet of the Walker chuck is turned from the "on" to "off" position, but only differences in the language used to describe the result. In Exhibit 19, a drawing of the Walker chuck, when the central cylindrical magnet is in the "on" position, the north poles of the three magnets are in upward alignment, and the work-pieces are firmly held by force of flux circuits running from the north poles of the magnets through the upper pole pieces, through the work-pieces, and back to the south poles through the upstanding legs and base portions of the lower pole pieces. When the central magnet is rotated to "off" position, so that its south pole is now upward, in alignment with the north poles of the two fixed magnets, the work-pieces are released because the flux, with magnetomotive force undiminished, has been diverted from the work-pieces into alternate circuits. That is, the flux from the north pole of the left-hand fixed magnet now passes through the upper pole piece, through the central magnet, thence through the lower pole piece back to the south pole; the flux from the

north pole of the right-hand fixed magnet follows a corresponding course; the flux from the north pole of the central magnet divides, some of it passing through the pole piece and the left-hand fixed magnet and back again to the south pole of the central magnet, the remainder of its flux following a corresponding course through the right-hand fixed magnet. The foregoing was substantially conceded by defendant's expert witness.

The court, I think, has attached undue importance to the words "shunt" and "shunting", referring to a portion of the testimony of defendant's expert to the effect that in Walker's chuck the work-pieces are not released "primarily by shunting, but primarily by balancing opposing magnetomotive forces—by putting balanced magnets in opposition to one another—a wholly different principle of operation from that taught by Bower and Bing and Block." So far as I am aware, "shunting" is not a word of art, and means no more than shifting or diverting. The claims in issue put no special emphasis on this particular term. Neither "shunt" nor "shunting" appears in claims 1 and 4 of Bing and Block, nor in claim 7 of Bower. In fact, the court, in summarizing all the claims in issue, does not use the word "shunt", but describes the claims, accurately, I believe, as covering the "release of a work-piece by a relative movement of parts whereby an auxiliary magnetic circuit is created to divert the flux of permanent magnets away from the surface of the chuck and the work-piece thereon through a path or circuit within the chuck itself." The Walker chuck fits this language like a glove. The correspondence is even more sharply evident by reference to the exact language of Bower's claim 7:

"A magnetic chuck, comprising means for creating a magnetic field, a work supporting member disposed in said magnetic field and having portions of relatively high and relatively low permeability, and means for selectively adjusting said work supporting member relatively to said magnetic field whereby to cause the magnetic flux to pass through the work on the chuck to hold said work in position to be operated upon, *said means being shiftable to establish an auxiliary circuit to cause the magnetic flux to be diverted from the work while the work remains in the normal magnetic work holding zone to release the work from the chuck.*" [Italics added.]