## BROWN & SHARPE MFG. CO. et al. v. KAR ENGINEERING CO., Inc.

### Civil Action No. 2419.

District Court, D. Massachusetts.

Feb. 14, 1945.

Maxwell Fish (of Fish, Richardson & Neave) and Hector M. Holmes, both of Boston, Mass., for plaintiff.

Clifford H. Byrnes (of Hale, Sanderson, Byrnes & Morton), of Boston, Mass., and Thomas J. Byrne, of New York City, for defendant.

Findings of Fact and Conclusions of Law

WYZANSKI, District Judge.

Fdg. 1. This is a suit for infringement of United States patent to Bower No. 2,-053,177 issued September 1, 1936, on application filed December 6, 1934, for a work holder or chuck with permanent magnets. The claims of the Bower patent relied upon are 1, 5, 7 and 14.

Fdg. 2. The alleged invention was made in England by William Leslie Bower. He assigned it to his employer, James Neill & Company (Sheffield), Limited, of Sheffield, England. The patent was issued to that company which gave an exclusive license to plaintiff, Brown and Sharpe Manufacturing Company. Defendant, The Kar Engineering Company, Inc., is a Massachusetts corporation located at Great Barrington, Massachusetts, engaged in the manufacture of the device of which complaint is made.

Fdg. 3. The basic principles of magnetism, so far as necessary to an understanding of the patent and of this case, may be briefly summarized.

Fdg. 4. Every magnet has at the extremities of its axis two regions where the magnetic flow concentrates and the attractive power is greatest. These regions are known as magnetic poles. One pole, known as north or positive or plus, is the pole that points to the North Pole of the earth. The other pole is known as south

or negative or minus. Lines of force emanate from one pole, form closed continuous loops passing to the other pole and continue through the magnet itself. Magnetic lines always form a complete magnetic circuit.

Fdg. 5. Only iron and certain alloys of iron exhibit magnetic properties. Not only can they be magnetized but through them magnetic flux flows with greater ease and density than through air or other non-magnetic materials.

Fdg. 6. Magnetic flux will take the easiest path. Thus if a piece of iron or steel is placed in a magnetic field, the lines of force passing through the air will tend to pass through the iron and concentrate there more than they would in a similar space of air.

Fdg. 7. If across the poles of a magnet is directly placed a work piece of magnetic material, the magnet will hold the work piece. If across the poles of a magnet is first placed a piece of iron and then on top of the iron a work piece of magnetic material, most of the lines of force will concentrate in and pass through that iron and practically none of the lines of force will reach that work piece and exert any pull on it. If between the poles of a magnet and a work piece of magnetic material there are air gaps of an eighth of an inch only a small amount of the magnetic force will reach the work piece and exert any pull on it.

Fdg. 8. There are two principal types of magnets, electro magnets and permanent magnets. They have similar qualities of attraction. An electro magnet is created by placing a bar of soft iron in the center of a coil of wire carrying an electric current. So long as the electric current continues, but no longer, the bar of soft iron acts as a magnet. A permanent magnet is created by placing a bar of hard steel or of certain alloys, such as cobalt magnet steel or Alnico, within a coil of wire carrying an electric current. Even after the current is turned off, this type of bar will retain a substantial part of its magnetism.

Fdg. 9. On the basis of these widely known principles of magnetism, work holders or chucks, with electro magnets or with permanent magnets, were devised at least as early as the end of the nineteenth century.

Fdg. 10. A work holder or chuck is an instrument for holding by magnetic attraction a work piece of iron, steel or similar magnetic property. It is particularly use-ful if the work piece is to be machined or ground.

Fdg. 11. The difficulties with chucks of the electromagnetic type were that they depended on direct, not alternating, electric current which was not always available and which therefore sometimes had to be procured through rectifying alternating current; that electric current cost money; that if the current broke down the chuck became inoperable; that if the current suddenly ceased the work piece might fly off and damage the workman or the work piece or other property; that waterproofing was necessary to prevent short circuiting; and that electromagnets generate heat which might distort the work and interfere with precision grinding.

Fdg. 12. Before Bower, the difficulty with chucks of the permanent magnet type was that they had no means for readily removing or releasing, rather than forcing, a work piece from the chuck.

Fdg. 13. These difficulties are recited by Bower in his application. He specifically points out that with chucks using permanent magnets the difficulty has been to remove a work piece without force. His invention overcomes this difficulty by covering the poles of the permanent magnets with separate pole pieces which can be moved relative to the magnets. When this movement occurs, all or almost all the magnetic flux between adjacent magnetic poles passes through these separate poles. This movement reduces the magnetic force attracting the work piece, and thus enables the work piece to be removed readily while the work remains in the normal work holding zone.

Fdg. 14. The construction of the Bower patent is illustrated in his Fig. 2. There are shown as permanent magnets four W-shaped magnets. Each of those four W-shaped magnets has a central pole of one polarity and end poles of the opposite polarity. These four magnets with their twelve poles are housed in a casing. The casing has a flat cover or face plate which forms a table for a work piece. The face plate itself is made of non-magnetic material. In that plate, however, are cast twelve inserts of magnetic material. These inserts have straight sides. They are separated from one another by the non-magnetic material of which the face plate is composed. The four W-shaped magnets with their twelve poles are connected by links to an eccentric pin on a shaft which

can be rotated by a handle. By turning the handle, the user can place the twelve poles of the four W-shaped magnets so that the twelve poles inserted in the face plate either are directly over the twelve poles of the four W-shaped magnets or bridge the gaps between the twelve poles of the four W-shaped magnets. In the former case, almost all the magnetic flux will flow from the north pole of each W-shaped magnet through the magnetic insert directly above, through any appropriate work piece of magnetic material laid on the face plate, through the adjoining magnetic insert to the south pole of the same W-shaped magnet—thus providing magnetic attraction to hold firmly a work piece laid upon the face-plate. In the latter case, almost all the magnetic flux will flow from the north pole of each W-shaped magnet through the magnetic insert which acts as a bridge to the south pole of the same W-shaped magnet—thus reducing to a negligible amount the magnetic attraction holding a work piece laid upon the face plate. The former case is called the "on" position; the latter case the "off" position.

Fdg. 15. Claim 5 is representative of the four claims, 1, 5, 7 and 14 in issue. It reads as follows:

"5. A work holder for articles of magnetic material comprising a work holding member, a plurality of permanent magnets mounted contiguous to said work holding member, magnetic conductors of high permeability mounted in said work holding member for causing flux from said magnets to flow through work laid on said member within the zone of magnetic influence, and means for effecting relative movement between said magnets and said conductors to shunt said flux out of said work while the work remains in the normal magnetic work holding zone of said magnets."

This claim defines Bower's invention. The face plate or flat cover of the casing is the "work holding member." In Fig. 2 the W-shaped magnets are examples of the "plurality of permanent magnets mounted contiguous to said work holding member." The inserts of magnetic material on the face plate are the "magnetic conductors of high permeability mounted in said work holding member for causing flux from said magnets to flow through work laid on said member within the zone of magnetic influence." The links, pin, shaft and handle are examples of "means for effecting relative movement between said magnets and said conductor." And when the handle moves the magnets to the off position, the inserts which bridge the W-shaped magnets "shunt said flux out of said work while the work remains in the normal magnetic work holding zone of said magnets."

Fdg. 16. Bower's invention entered upon a field where in the last half century numerous patents had been granted. None of these prior patents pointed directly to the use of a simple lever to release from a magnetic chuck a work piece while the piece was left in the normal work holding zone.

Fdg. 17. When plaintiff embodied Bower's invention in a commercial chuck, it was an immediate success. The trade greeted it with astonishment and enthusiasm at its simplicity. From July 1937 to July 1944 23,335 rectangular models of the chuck were sold; and from 1939 to July 1944 over 20,000 rotary models were sold. The net sales were approximately $2,800,000.

Fdg. 18. Defendant contends (a) that the patent is invalid for failure of the patentee to comply with R.S. § 4888, 35 U.S. C.A. § 33, which directs that he "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery"; (b) that the patent in suit fails to disclose anything which was patentable over the prior art and that the patent is therefore invalid for lack of patentable invention; (c) that if there is an invention, it is limited, both because of the prior art and because of the history of the application in the patent office, to an all metallic auxiliary circuit for diverting the magnetic flux from passing through the work piece; and (d) that defendant's chuck does not infringe the patent in suit because in the off position defendant's chuck uses an air gap and not an all metallic circuit to prevent the magnetic flux from passing through the work piece.

Conc. 1. Defendant's first contention is without merit. The suggestion that the patentee failed to particularly point out the improvement which he claimed as his invention is unfounded. The specification clearly asserts what were the difficulties in the prior art, notes that the essential character of Bower's invention is the relative movement of the magnets and the pole pieces, and suggests that the magnets be slidably arranged in a casing so that they

may be put in or out of line with magnetic pole pieces cast in a non-magnetic face plate. To be sure the specification does not define the word "shunt" or the phrase "auxiliary circuit." These terms appear only in the claims. Yet these are familiar terms which as here applied are not vague. The Bower patent is not invalid for failure to comply with R.S. § 4888, 35 U.S.C.A. § 33.

Fdg. 19. Defendant's second contention, that there is a lack of patentable invention, requires a consideration of seven prior art patents.

Fdg. 20. Walker No. 564,296 of 1896 is a patent for a magnetic chuck of the electro-magnetic type. The inner core forms one pole of the magnet; the outer shell, the other. The inner core is surrounded by a magnetized coil. Between the inner core with its surrounding coil and the outer shell there is a narrow space or gap. This gap is filled with either air or non-magnetic material. This gap keeps the circuit open until it is closed by the workpiece which is to be held in place.

Fdg. 21. Walker does not teach the use of permanent magnets or the means of releasing a work piece from a permanent magnet.

Fdg. 22. Varley No. 808,957 of 1896 covers a combination of a magnetic device for closing a circuit and a mechanical device for breaking a circuit. The magnetic device uses two poles of a permanent magnet. Between the two poles is a rotating iron disk. That disk carries upon its periphery an integral pin or lug. Above the disk is a soft iron armature. This armature is attached to a plunger which in turn is attached to a spring. When the lug of the disk is directly under the armature, there is sufficient magnetic force to pull down or attract the armature so that the circuit is closed. When the lug moves away, an air gap develops, the magnetic force is greatly reduced, and the spring retracts the armature so that the circuit is broken.

Fdg. 23. As Varley plainly recognized, his invention applies the principle that an iron path will concentrate magnetic flux and thus attract metal. His invention also applies the principle that an air-gap acts as a hindrance to magnetic flux. However, Varley pointed not to the air-gap but to the mechanical spring as the means for breaking the circuit.

Fdg. 24. Hanson No. 1,003,900 of 1911 discloses a magnetic chuck. He refers both to magnets connected with a source of electrical energy and to permanent magnets. However, his actual disclosure relates only to magnets connected with a source of electrical energy. He shows two sections. One section is an iron core connected with a dynamo or other source of electricity. The other section is a bodily removable tray with magnetic sections separated by non-magnetic sections. The work piece is laid upon the tray which supports it. Then the electric current is turned on and the magnetic flux holds in place the tray and the work piece. To release the tray and the work piece, the current is turned off.

Fdg. 25. Nothing in Hanson shows how to release a work piece if the magnet instead of being an electro-magnet is a permanent magnet. Nothing is said of a diversion of lines of magnetic force in order to release a work piece from a chuck.

Fdg. 26. Karasick No. 1,301,135 of April 22, 1919, covers a fixture for use with magnetic chucks. The fixture is a separable member to be used as a work-support or work table. The work support is formed of alternate laminations of magnetic and non-magnetic material. Its purpose is to hold work which because of its irregular shape or small size cannot effectively be brought into proper, direct contact with the poles of a chuck. The Karasick fixture or work table because it has more poles than the chuck and is more freely movable is adaptable to making contact with and thus holding an irregularly shaped work piece.

Nothing in Karasick shows how to release a work piece from a chuck made of permanent magnets, or from a work support used with such a chuck.

Fdg. 27. Karasick No. 1,312,546 of August 12, 1919, is for another fixture for magnetic chucks. It differs from Karasick No. 1,301,135 principally in that the fixture is composed of two coacting blocks which are adjustably movable with respect to each other. The movement of these blocks permits a work piece to be held at different angles without clamps.

Fdg. 28. Nothing in this Karasick patent shows how to release a work piece from a permanent magnet.

Fdg. 29. Simmons No. 1,343,751 of 1920 discloses another type of adjustable block. It is comprised of laminations of magnetizable and nonmagnetizable material.

The block serves as a work table for a magnetic chuck. Simmons was concerned with a device to avoid the loss of magnetic force which followed from the existing types of separable work tables customarily used with magnetic chucks. He taught the use of an adjustable device with a stationary base and a movable top, and also means for interlocking those two parts. He cautioned readers that if the magnetic strips in the top piece were wider than those in the base piece there would be a short circuit. That is, he pointed out that under such circumstances the magnet and block would never hold any work piece. But he did not show how a magnet and block could at the will of the operator alternately hold and release a work piece.

Fdg. 30. Bing No. 1,704,783 of 1925 shows an electromagnetic chuck. The drawings illustrate a round chuck with a rotating face. The inventor asserts, however, that his invention may also be used in connection with chucks of rectangular form having a pole plate which is slidably arranged with respect to the magnet system. The round chuck, to which Bing devotes his principal attention, has two fixed magnetic systems of opposite polarity. These systems are diametrically opposite one another. In one system there are two north poles at the outside and one south pole on the inside. In the other system there are two south poles at the outside and one north pole on the inside. All six poles are stationary. All six extend about 120°. Above each of these poles is a ring of magnetic material between two rings of non-magnetic material. Since the two systems of poles are diametrically opposite one another, and since all the rings extend for 360°, it is necessary to have only three rings of magnetic material and four of non-magnetic material to cover all the poles. Those three magnetic rings and four non-magnetic rings are all inserted in a plate. When a work piece is placed on that part of the plate which is over the 120° occupied by one system of poles or the 120° occupied by the other system of poles, it is held in place by magnetism. When the work piece is carried to the point midway between these two 120° areas, the two systems of associated magnets being of opposite polarity, the magnets neutralize each other, the magnetic force is shunted through the plate, and the work is released. There is no evidence that this invention has ever been used commercially.

Fdg. 31. The essential character of Bing's invention is that the work piece is moved by means of a rotating table from a magnetic zone to a non-magnetic zone. On the other hand, Bower's disclosure leaves the work piece constantly in the normal magnetic work holding zone.

Fdg. 32. Edwards British patent No. 229,772 of 1925 relates to an improved means for retaining a tee-square in contact with the edge of a drawing board. The invention consists in the provision of magnetic means interacting between the abutting edges of the tee-square and board. For instance, the edge of the stock of the tee-square may be lined with a permanent magnet having two poles and the contacting edge of the board furnished with a magnetized strip. Edwards suggests that to release the tee-square from its contact with the board one may use an extraneous movable member composed of magnetizable material. This will serve as a means of short circuiting the two poles of the permanent magnet.

Fdg. 33. The substance of Edwards' invention is that if a tee-square has two magnetic poles it will adhere to a board having a magnetic edge, and that any piece of iron or other magnetic material can serve to disconnect the two. In Edwards' invention this piece of iron is supplied by an extraneous member.

Conc. 2. Taken as a whole the prior art patents, such as Hanson, show many different types of magnetic chucks both of the electromagnetic type and the permanent magnet type as well as separable fixtures or blocks to be used with such magnets. They also show that in some devices far removed from chucks, such as the tee-square disclosed by Edwards, inventors had provided all metal auxiliary circuits as a means for diverting magnetic flux from the path where it was principally desired. But, with the exception of Bing, this diversionary principle had not been applied to chucks with permanent magnets. Bing's disclosure is not entitled to be given great weight as an anticipation of Bower because first, it is even on paper a complicated arrangement for bringing into play an auxiliary all metal circuit; and second, it was never commercially successful (R. 199) presumably due to its complexity or to the fact that the work piece cannot be left in position but must travel "a circular path underneath some tool" (R. 157). Even after Bing a decade went by without the trade using

permanent magnetic chucks. What was evidently needed was a device that was simple to operate and which would first hold firmly in place a work piece and then without moving the work piece release it so it could be removed without application of any effort or energy beyond that ordinarily required. Bower's device satisfied that need. This is demonstrated by the immediate commercial success of his device. Of course, the sales were augmented by the demand created for machine tools by the war. But, even if this inflated demand be discounted, the showing is impressive. Looking back on Bower's accomplishment, we may consider it is an obvious application to chucks of principles and techniques familiar to skilled craftsmen. On the other hand, this hindsight disregards the history of chucks. For years tool makers were producing chucks and inventors were offering applications to the Patent Office for improvements of chucks. Nonetheless until Bower they never coordinated their knowledge of existing chucks with their knowledge of means for diverting magnetic flux so as to produce a chuck of a permanent magnet type from which work could be released while in the normal work holding zone. Once this combination was offered it was granted a patent both abroad (Ex. I, p. 19) and by the United States Patent Office, and had an instantaneous success.

Conc. 3. If it were not for Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. 58 and the line of authority which it has engendered, see, for example, Anderson Co. v. Lion Products Co., 1 Cir., 127 F. 2d 454, I should, on the basis of the considerations set forth in the preceding paragraph, have concluded that Bower had made a patentable invention. But I cannot see how such a conclusion can stand in the light of the changed standards prevailing since the recomposition of the Supreme Court of the United States. In Cuno's case the prior art disclosed a wireless cigar lighter which an operator inserted in and, when the lighter was hot, removed from the dash board of an auto. Mead added to the lighter a thermostatically controlled heating unit so that the lighter automatically ejected itself. The Court decided that Mead's device was not a patentable invention. The use of a thermostatic control, since it was familiar in other connections, was held to be the mere bringing of an old tool into a new combination. In the case at bar the prior art disclosed a chuck of the permanent magnetic type from which an operator would have to remove a work piece by force. Bower rearranged the chuck to offer an all metallic auxiliary circuit so that the operator could remove a work piece without force. The use of an all metallic auxiliary circuit, since it is familiar in other connections, must be held to be the mere bringing of an old device into a new combination.

Conc. 4. Tested by the rules enunciated by Mr. Justice Douglas in Cuno's case, I conclude that claims 1, 5, 7 and 14 of the Bower patent are invalid. The language of Mr. Justice Douglas, 314 U.S. at pages 91–92, 62 S.Ct. 40, 86 L.Ed. 58, with only slight changes, covers this case. "The principle of the Hotchkiss case applies to the adaptation or combination of old or well known devices for new uses. * * * That is to say, the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. * * * Tested by that principle [Bower's] device was not patentable. * * * He merely incorporated the well-known [auxiliary all-metal circuit] into the old [magnetic chuck] to produce a more efficient, useful and convenient article. * * * A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' * * * even though the new result had not before been contemplated. * * * Certainly the use of a [metal path] to break a circuit in a [magnetic chuck] is analogous to or the same in character as the use of such a device in [tee-squares and other instruments utilizing magnetic force], whatever may be the difference in detail of design. Ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art."

Conc. 5. In view of my conclusion that Bower's device was not patentable, it becomes unnecessary to consider defendant's third and fourth contentions.

Defendant may submit an appropriate decree in conformity with these findings and conclusions.