**BROWN & SHARPE MFG. CO. et al. v. O. S. WALKER CO., Inc.**

**Civil Action No. 2957.**

District Court, D. Massachusetts.

April 4, 1947

Hector M. Holmes, Maxwell Fish, and Fish, Richardson & Neave, all of Boston, Mass., for plaintiffs.

Charles R. Fay, of Worcester, Mass., and Nathan Heard, Frederick A. Tennant, Heard, Smith & Tennant, Melvin R. Jenney, Jenney & Hildreth, and Richard R. Hildreth, all of Boston, Mass., for defendants.

FORD, District Judge.

This suit involves claimed infringement of two patents. First, claims 5, 7, and 14 of United States patent No. 2,053,177 applied for December 6, 1934, by one William Leslie Bower, a British subject, and issued to James Neill & Company (Sheffield) Limited, a British Company, his assignee on September 1, 1936, are in suit. Second, claims 1 and 4 of United States patent No. 2,209,558 are in suit. This patent was applied for by Julius Bing and Otto Block, of Berlin, Germany, on May 19, 1938, and issued to their assignee, one Goettsch, on July 30, 1940. The plaintiff, Brown and Sharpe, is the holder of an exclusive license to make, use, and sell in the United States the devices covered by both patents. Both patents are for improvements in permanent magnetic chucks or work-holders.

The defendant in its answers asserts invalidity and non-infringement of the patents in suit. The Bower patent was litigated in this circuit in Brown & Sharpe Mfg. Co. et al. v. Kar Engineering Co., Inc., 154 F.2d 48. There the Circuit Court of Appeals for the First Circuit concluded that claims 1, 5, 7, and 14 of the Bower patent were valid. The defendant, even if the claims in suit are valid, challenges the plaintiffs' construction of the claims in suit here in the Bower patent, and it contends there is an attempt to expand them unwarrantably so as to sweep the defendant's manufactured device within them.

The principles of magnetism necessary for an understanding of the Bower patent and a description of Bower's contribution to the permanent magnetic chuck field may be found in Judge Woodbury's opinion in ·154 F.2d 48 and also in Judge Wyzanski's District Court opinion in the same case in 59 F.Supp. 820. There is hardly any need to set forth in detail the same material here. What Bower accomplished can be found set forth by Judge Woodbury, 154 F.2d on page 50 of his opinion. He states: "Bower applied these familiar principles of magnetism in what appears to be a novel way. In the metal casing of his chuck, the box part, he, in patent jargon 'slidably,' arranged two rows of W-shaped permanent magnets, each row consisting of four magnets in tandem. Each of these magnets was made with a central pole of one polarity and end poles of the opposite polarity, and they were arranged so that their poles,

all of which pointed upward, alternated. He connected the magnets in each row to one another by links, and he connected the magnets on one end of each row by links to eccentric pins on a shaft extending transversely across that end of the casing. Thus by rotating a lever attached to one end of the transverse shaft outside the casing he could simultaneously move all the magnets a short distance longitudinally in the casing. Then he put the cover on the casing which formed the work holding surface of his chuck. This consisted of a plate of non-magnetizable metal into and extending through which were cast a series of inserts or plugs of 'high permeability magnetic material' that is, of a metal like soft iron through which magnetic flux passes readily. He designed this cover so that when the magnets were moved by the lever on the transverse shaft, as has been described, to the 'on' position each pole of each magnet registered directly under a separate insert. Thus, in this position each separate insert formed a pole piece, in effect an extension, of the pole of each magnet and in consequence the flux emanating from the poles of the magnets passed up through the pole pieces to the surface of the cover. So when a work piece of magnetizable material was placed on the chuck it was held firmly in place by the attraction of the magnets. But when the lever was moved to 'off' position and the magnets shifted accordingly, the inserts or pole pieces, instead of forming extensions of the poles of the magnets, formed bridges or keepers between adjacent magnetic poles, and in consequence the flux was shunted, or in effect short-circuited, through the inserts and out of the work piece on the cover. Thus the work piece could easily be removed." The court then quoted from the opinion of the lower court as follows: " 'Nonetheless until Bower they never coordinated their knowledge of existing chucks with their knowledge of means for diverting magnetic flux so as to produce a chuck of a permanent magnet type from which work could be released while in the normal work holding zone. * * * In the case at bar the prior art disclosed a chuck of the permanent magnetic type from which an operator would have to remove a work piece by force. Bower rearranged the chuck to offer an all metallic auxiliary circuit so that the operator could remove a work piece without force.' " In the Brown and Sharpe adaptation of the principle reflected by Bower in his invention, the former uses rectangular permanent magnets all magnetized in the same direction, so mounted as to be movable and the magnets are not of opposite polarity as in Bower but the magnets of the same polarity alternate with soft iron bars (conductor bars), each conductor bar supplying the return path for the flux generated by the adjacent magnet, both in "on" and "off" position. Obviously, shifting his magnets with relation to the pole pieces establishes the auxiliary circuit in Bower for shunting the magnetic flux out of the work.

Claim 14 of the claims in suit is representative and reads as follows:

"14. A work holder of the class described, comprising a permanent magnet, pole piece means associated with the poles of said magnet whereby to create a magnetic work holding circuit, and means for effecting relative movement between said pole piece means and magnet to establish an auxiliary circuit for shunting the field out of the work while the work remains in the normal magnetic work holding zone to release the work from said holder without moving the work respecting its held position on the holder."

The Bing-Block patent, U. S. patent No. 2,209,668, shows a chuck with rotatable permanent magnets, the latter instead of being W-shaped perpendicular bars as in the Bower patent are essentially cylindrical in shape. The magnets in the Bing patent are diametrically magnetized (claim 4) and are journaled into cylindrical-shaped channels machined in soft iron pole pieces or limbs on either side of the magnet cores. The spaces separating the tops of the pole pieces are filled up by bars of non-magnetic material. The work holding face of the chuck comprises the tops of the pole pieces. In the "on" position of a single magnet unit (useful as a small chuck) with the north pole of the magnet journaled into the cylindrical channel of the left hand pole piece, the magnetic lines in Bing and Block

pass out the north pole of the cylindrical magnet, cross the minute air gap between the cylindrical portion of the magnet core and the pole arc of the limb up through the left soft iron pole piece into which the magnet is journaled, then through the work piece, back down through the pole piece on the other side of the magnet, entering the magnet at the south pole. Obviously, the magnetic flux attracts the work piece straddling poles of opposite polarity and holds it in place as in all chucks. To remove the work in Bing the cylindrical magnets are rotated by a crank, mounted on the end of the chuck, through an angle of 90°. The inventors in their specification describe the result reached as follows: "The magnetic flux then becomes gradually weaker, since the reluctances between the overlapping parts of the poles of the magnet cores on the one hand, and of the pole arcs of the magnet limbs on the other hand are continually becoming greater. After a rotation of 90° the magnet cores are *magnetically short-circuited by the associated magnet limbs* and the action of the pairs of flux systems then arising counteract one another." (Emphasis supplied.) Bing and Block go on to describe another feature of their patent when the magnets are rotated a short distance beyond 90°. They state: "In consequence of the residual magnetism both of the limbs of the magnets and of the workpiece, however, the latter still adheres, so that the removal causes difficulties in some circumstances. In order to eliminate even the last traces of magnetism all that is necessary is to rotate the magnet cores * * * through a small angle further. The leakage flux passing through the limbs of the magnets and through the work then increases again. Now however the lines of force are in the reverse direction, so that the residual magnetism can be caused to disappear completely."

In view of the result reached in this opinion, it will not be necessary to set forth and discuss the claims in suit.

It follows and I find from what has been said that both Bower and Bing and Block employ the pole pieces of their special and effective types of assembly as shunts to divert the magnetic flow out of the work while the work remains in the normal magnetic work holding zone to an auxiliary path through the shunts, thereby releasing the work piece. Bower utilizes portions of his face plates, viz., the inserts or pole pieces, as shunts to divert the magnetic flux from the work piece, while Bing and Block use the arcuate pole pieces or limbs into which the center magnets are journaled as their shunts. It is plain that though Bing and Block's device functions on the Bower principle, yet, as has been seen, Bower shifts his magnets laterally with relation to the face plates to provide his shunt and create his auxiliary circuit while in Bing and Block the magnet is moved relative to the associated magnet limbs by rotation to shunt the magnetic field out of the work. Bing and Block show something new, different and useful, which has met with considerable success. However, no opinion need be expressed in view of the result reached as to whether Bing and Block's device embodies invention.

### Walker Chucks.

The defendant, O. S. Walker Company, Inc., has been the manufacturer of electromagnet chucks for a long period of time and in 1944 brought a permanent magnetic chuck on the market. The defendant is the owner of two U. S. patents on permanent magnet chucks, Beechlyn 2,268,011 and 2,347,023, the former issued December 30, 1941, and the latter April 18, 1944.

The accused Walker chuck, substantially the construction shown in Beechlyn 2,268,-011, consists of a soft iron base plate, U-shaped, with two upstanding legs forming also the chuck sides. A semi-circular channel is cut in the base plate to accommodate a cylindrical magnet. The magnet assembly consists of three permanent magnets, extending longitudinally in the casing. Above the magnets is a top plate, or pole piece, with a semi-circular channel. The spaces between the upstanding legs of the bottom piece, the magnets and upper pole piece are filled with non-magnetic separators. Between the upper pole piece and the base plate are two fixed permanent bar magnets running the length of the chuck. Mounted for rotation in the arcuate channels of the pole piece is a rotatable cylindrical per-

manent magnet, which also runs the length of the chuck. This magnet comprises a permanent magnet bar with arcuate soft iron caps which form an extension of and function as a part of the magnet so that the assembly functions as a cylindrical magnet. In the "on" position the center magnet has its polarity aligned with the stationary magnets, so that reading across the tops of the magnets, there are three north polarities, constituting practically one large magnet. This arrangement unquestionably adds to the available magneto-motive force at the holding region of the chucks. The magneto-motive force in the "on" position may be said to leave the north poles of the magnets through the top plate to the work piece bridging the non-magnetic separators, continue its course through the work piece, and return through the upstanding legs and lower portion of the base plates or pole pieces to the south poles of the magnets. In the "off" position the center or rotary magnet is turned over so that the south pole is on top, resulting in two north poles on the two fixed magnets and a south pole on the center or rotatable magnet. Then there are juxtaposed magnets of opposite polarity. With magnets in this position, I find that the magnetic effect of the magnets is weakened to such an extent that the work piece is effectively released. I find that the interaction between the center magnet in this device and the two fixed magnets converts a maximum magneto-motive force condition to a minimum one, thereby releasing the work.

### Discussion.

The plaintiffs argue that the Walker chuck structure is an arrangement of permanent magnets with pole pieces in a chuck whereby there is created a magnetic holding circuit, and in which there is provided a movement of magnets in relation to pole piece means to establish an auxiliary circuit for diverting or shunting the flux out of the work while the work remains in the normal work holding zone—all defined by Bower in claim 14 (supra) of his patent. And, they argue, this structure utilizes the Bower teaching by using a cylindrical magnet embraced by or journaled in pole piece limbs and movable by rotation to establish the shunt or diverting circuit through the pole limbs, which is the essence of Bing and Block's teaching and claims.

The defendant contends that it does not infringe because its chuck has an entirely different construction and mode of operation from both patents in suit.

The evidence in this case is rather voluminous with respect to the technical aspects of the problem involved and this court will not attempt to discuss them in all their aspects but will deal with them as adequately as it thinks necessary to support its conclusion that the Walker device involves a different mode of operation from Bower and Bing and Block.

First, as to construction, it is plain there is a radical difference in the arrangement of the magnets of Bower and the accused device of the defendant. The change from "on" to "off" is accomplished in the defendant's device by turning the single center magnet while maintaining the others stationary, as distinguished from sliding the entire magnet assembly under the top plate in the Bower and Brown and Sharpe chucks. In passing upon the question of infringement of Bower in the Kar Engineering case (cited supra), the court thought it of considerable significance, in reaching the conclusion that the Kar chuck infringed, that there was the same arrangement of magnets and from "on" to "off" positions they were moved longitudinally.

Second, this court finds that the Walker chuck operates on a substantially different principle from Bower and Bing and Block.

Both the Bower and Bing and Block patents employ soft iron shunts to short circuit the work piece, i. e., divert the lines of magnetic force to a path of less reluctance than that provided by the work piece. Bower, as shown, uses portions of the face plate for the purpose of diverting the flux. Bing and Block use the cylindrically hollow limbs which support the magnet. The defendant resorts to a different principle; it confines the effective magneto-motive force to the area immediately adjacent to the magnets by juxtaposing balanced magnets of opposite polarity. Some flux, it is true may be diverted

through the contiguous pole pieces. But the main cause of the demagnetization of the face plate is a narrowing of the effective magnetic field due to the interaction of practically contiguous magnets of opposite polarity.

That the defendant employes the inherent properties of its group of magnets rather than shifting the magnets in relation to the pole pieces, as in Bower, to release the work was demonstrated at the trial by the defendant's expert Brown. In one experiment, he removed the central magnet from defendant's exhibit "S," a 4" x 8" Walker chuck, and replaced it with a soft iron cylinder of the same dimensions. It became almost impossible to remove a work piece from the face plate. The shunting effect of the iron cylinder only slightly reduced the holding power of the stationary side magnets. Brown testified that he had performed a similar experiment in his laboratory, using measuring instruments, and had found that in the normal "on" position, the chuck exerted an average pull of 105 pounds on a work piece of soft iron measuring one cubic inch; when the central magnet had been removed and nothing inserted in its place, an average pull of 90 pounds; when the cylindrical iron shunt had been inserted, an average pull of 50 pounds.

In another experiment performed at the trial, Brown removed the central magnet from exhibit "S" and exposed it to the air before returning it to the chuck. Such an exposure weakens the strength of such a magnet. Operating the chuck with the magnet thus weakened, it became difficult for him to remove a work·piece from the face plate.

The chief contribution of Bower and Bing and Block was their devising means not of holding but of releasing a work piece. This, as has been seen, they accomplished by an ingenious arrangement of pole pieces which could short-circuit flux flowing through a work piece. They did not employ, as does the defendant, the counteraction of magnets of opposite polarity to contract the magnetic field. To accomplish any counteraction in the Walker device, shunts of the type employed in Brown and Bing and Block are ineffectual. Appropriate motion between the magnets is the operation that results in the contraction of the magnetic field which causes a diversion of flux from the work, not as in the patents in suit an appropriate movement between the magnets and pole pieces. Witness Brown's first experiment showed that. Moreover his second experiment showed that, in order effectively to contract the magnetic field and confine it to a region adjacent the magnets, the relative strength of the magnets has to be balanced. Neither Bower nor Bing and Block show anything equivalent to these features. The contention of the plaintiffs that the magnets in Walker move in relation to the pole pieces is true, but this movement in Walker is merely incidental while in Bower and Bing and Block it is the dominating feature. The latter patentees cannot hope to include within the scope of their claims all methods of releasing the flux from the work piece.

It is clear to this court that since Walker does not employ the same mode of operation as Bower or Bing and Block to divert the flux from the work to be released from the chuck, the conclusion must be that the patents in suit are not infringed by the defendant's chuck. Cf. Walker on Patents, Deller's Edition, Section 496; Holtzer-Cabot Electric Co. v. Standard Electric Time Co., 1 Cir., 111 F.2d 71.

In view of the result reached, it becomes unnecessary to pass on questions relating to the validity of the patents on which plaintiffs rely.

Complaint dismissed with costs.